812 A.2d 448

UNISYS CORPORATION, Appellee

v.

COMMONWEALTH of Pennsylvania, BOARD OF FINANCE & REVENUE, Appellant (Three Cases).

Unisys Corporation, Appellant

v.

Commonwealth of Pennsylvania, Board of Finance & Revenue, Appellee (Three Cases).

Supreme Court of Pennsylvania.

Argued Dec. 5, 2000.

Re–Submitted Aug. 21, 2002.

Decided Oct. 25, 2002.

Reargument Denied Dec. 31, 2002.

140

142

Kevin A. Moury, Harrisburg, for the Com. of PA, and Bd. of Finance & Revenue. Joseph C. Bright, Kevin Jon Moody, Philadelphia, for Unisys Corp.

Before ZAPPALA, C.J., and CAPPY,CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice SAYLOR.

These consolidated appeals concern constitutional and statutory challenges to the methodology employed by the Department of Revenue to calculate Pennsylvania franchise tax obligations of an out-of-state corporation conducting business activities in the Commonwealth.

Corollary to the capital stock tax imposed on domestic (Pennsylvania) corporations, the Commonwealth imposes a franchise tax upon foreign (out-of-state) corporations authorized to do business within its borders. In conformance with federal constitutional requirements, the tax is ostensibly designed to reach only value attributable to the conduct of in-state business activity. Nevertheless, the initial tax base is quite broad in that it subsumes measures of value generated by the taxpayer and its subsidiary corporations, both in and out of state. In attempting to adjust this broad tax base to

isolate in-state value prior to application of the tax rate, the taxing statute incorporates principles of formulary apportionment. Unlike the methodology utilized to determine the tax base, however, the apportionment formula prescribed by the taxing statute, as interpreted by the Department, does not take into account factors representing in- and out-of-state value generated by taxpayer subsidiaries. Unisys's present challenges are centered upon the absence of factor representation in single-entity, franchise value apportionment.

Unisys is a Delaware corporation with its principal offices in Blue Bell, Pennsylvania, conducting business in all states of the United States; it was formerly named Burroughs Corporation and is the successor by merger to Sperry Corporation.[1] Throughout the tax years in question, Unisys owned, directly or indirectly, the stock of more than one hundred domestic and foreign affiliates doing business in more than one hundred countries. Despite such ownership (and plain requirements of the taxing statute), in its franchise tax returns, Unisys calculated its tax base without reference to value attributable to its subsidiaries. In settling Unisys's franchise tax for the applicable years, however, the Department increased the tax base to include certain measures of out-of-state value. Nevertheless, in adjusting the tax base to arrive at a taxable value, the Department did not incorporate into the apportionment formula any indices of value pertaining to the out-of-state subsidiaries, which, according to Unisys, had the effect of distorting its tax liability (or, more specifically, increasing the taxable value by some forty-five percent). Unisys filed resettlement petitions with the Department, which were denied, then with the Pennsylvania Board of Finance and Revenue (the Board). The Board also denied Unisys's petitions, and the company lodged appeals in the Commonwealth Court sitting effectively as a trial court, see Pa.R.A.P. 1571, with the present appeals concerning the tax years ending March 31, 1985, and 1986 (Sperry Corporation returns), and December 31, 1986 (Unisys returns). At all stages of the litigation, Unisys contended that the apportionment formula applied by the Department violat-

1. Further references to Unisys include Sperry and Burroughs for the applicable tax years.

ed the Commerce and Due Process Clauses of the United States Constitution, U.S. CONST. art. I, § 8, cl. 3;[2] U.S. CONST. amend XIV, § 1, as well as statutory fair apportionment provisions set forth in Section 401 of the Tax Reform Code of 1971,[3] 72 P.S. § 7401(3)2.(a)(18).

Pursuant to the procedure for review of Board determinations, *see* Pa.R.A.P. 1571, the Commonwealth Court considered the appeal on a stipulation submitted by the parties. A divided, *en banc* court determined that the franchise tax imposed was consistent with constitutional precepts, but that Unisys was nevertheless entitled to statutory relief. *See Unisys Corp. v. Commonwealth,* 726 A.2d 1096, 1103, 1105 (Pa.Cmwlth.1999). The majority opened its opinion with a detailed overview of the mechanics of the taxing statute applicable to foreign corporations doing business in Pennsylvania. Under Section 601 of the Tax Code, 72 P.S. § 7601, the tax base, termed the capital stock value of the corporation, is first determined by a statutory formula based upon the corporation's net worth (the sum of the entity's issued and outstanding capital stock, surplus and undivided profits as per books . . ., 72 P.S. § 7601(a)), and average net income ( [t]he sum of the net income or loss for each of the current and immediately preceding four years, divided by five, 72 P.S. § 7601(a)). For such purposes, the taxpayer's net worth includes net worth of subsidiaries, *see* 72 P.S. § 7601(a) (In the case of any entity which has investments in other corporations, the net worth shall be the consolidated net worth of such entity[.] ).[4] Net income, however, is assessed on a separate-company, unconsolidated basis (exclusive of the net income or loss of subsidiary

**2.** Although the Commerce Clause does not expressly restrict the states' authority in the area of income/value taxation, the Supreme Court has long relied upon its negative implications as imposing the relevant constraints. *See, e.g., Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 179–80, 115 S.Ct. 1331, 1335–36, 131 L.Ed.2d 261 (1995) (discussing dormant Commerce Clause jurisprudence generally).

**3.** Act of March 4, 1971, P.L. 6 (as amended, 72 P.S. §§ 7101–10004) (the Tax Code).

**4.** The scope of this statutory definition is tempered by several doctrines, including those of multiformity and unrelated assets, *see generally Commonwealth v. ACF Indus., Inc.,* 441 Pa. 129, 134–35, 271 A.2d 273,

corporations), although it includes dividends received from subsidiaries. *See* 72 P.S. § 7601(a); 61 PA.CODE § 155.26(a), (b); *see also Philadelphia Suburban Corp. v. Commonwealth,* 535 Pa. 298, 303–05, 635 A.2d 116, 119–20 (1993). *See generally Unisys,* 726 A.2d at 1098–99. The statute defines capital stock value as the average of seventy-five percent of net worth and capitalized average net income, subject to a fixed deduction.[5]

Following calculation of the tax base, one of two elective methods of apportionment is employed to arrive at a taxable value, again, in deference to the constitutional proscription against state taxation of value earned outside the state's borders. The method applicable to foreign corporations per the terms of the Tax Code is known as three-factor apportionment, *see* 72 P.S. §§ 7602(b), 7401(3)2.(a)(9)(B), 7603.[6] This method compares certain in-state business activities of a taxpayer with all such of its activities, regardless of the location. Specifically, the formula calculates the mathematical average of three ratios: intrastate property to property everywhere; intrastate payroll to payroll everywhere; and intrastate sales to sales everywhere. Therefore, the apportionment fraction equals:

$$\frac{\text{Property in PA}}{\text{Property everywhere}} + \frac{\text{Payroll in PA}}{\text{Payroll everywhere}} + \frac{\text{Sales in PA}}{\text{Sales everywhere}} \div 3 = \text{Apportionment factor}$$

*Unisys,* 726 A.2d at 1099 (citing 72 P.S. § 7602(b)(1)). In the

276 (1970), which have been crafted to accommodate the salient constitutional principles discussed below.

5. Specifically, the taxing statute defines capital stock value as:

The amount computed pursuant to the following formula: the product of one-half times the sum of the average net income capitalized at the rate of nine and one-half per cent plus seventy-five per cent of net worth, from which product shall be subtracted one hundred twenty-five thousand dollars ($125,000), the algebraic equivalent of which is

(.5 (average net income/.095 (.75)
(net worth))) $125,000

72 P.S. § 7601(a). For tax years 1985 and 1986, the final adjustment was to subtract $100,000, rather than the present $125,000. *See* 72 P.S. § 7601(a) (superseded).

6. Per the noted provisions, the three-factor formula is reposited in the corporate net income taxation statute and incorporated by reference into the franchise tax provisions.

application of this formula, the Commonwealth Court majority emphasized that:

As consistently interpreted and applied by the Department, the property, payroll and sales figures that comprise the three fractions represent *only the property, payroll and sales of the taxpayer itself, and not of the taxpayer's subsidiaries.* Thus, under this method, while the net worth of and dividends paid by certain subsidiaries of a corporation are included in the corporation's actual value, the property, payroll and sales of those subsidiaries are not considered in the apportionment formula.

*Unisys,* 726 A.2d at 1099 (emphasis added). After apportionment, the tax due is then computed by applying the millage rate to the taxable value.[7]

Having reviewed the relevant provisions of the Tax Code, the *Unisys* majority proceeded to consider the pertinent constitutional precepts as developed in seminal decisions of the United States Supreme Court, principally, *Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983); *Mobil Oil Corp. v. Commissioner of Taxes of Vt.,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978); *Norfolk & W. Ry. Co. v. Missouri State Tax Comm'n,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968); and *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931).[8] The starting point of these decisions, again, was the limitation arising under the Commerce Clause upon taxa-

7. Thus, for a year in which the tax rate is ten mills, the tax due is represented mathematically by:

actual value × apportionment fraction × .01

Foreign corporations are also afforded the option of calculating capital stock value according to the single-factor formula. The single-factor formula is authorized by the Act of June 22, 1931, P.L. 685, No. 250 (as amended 72 P.S. § 1896), and may be employed by foreign corporations pursuant to this Court's decision in *Gilbert Assocs., Inc. v. Commonwealth,* 498 Pa. 514, 516, 447 A.2d 944, 945 (1982). Under that method, the apportionment fraction is based upon the percentage of the corporation's real and tangible personal property located in-state. *See* 72 P.S. §§ 1894, 1896; 61 Pa Code § 155.10.

8. While many of the United States Supreme Court decisions in this area concern corporate income tax, the first instances of application of the

tion by states of corporate income or value generated beyond their borders. *See Unisys,* 726 A.2d at 1100. *See generally Container Corp.,* 463 U.S. at 164, 103 S.Ct. at 2939; *Goldberg v. Sweet,* 488 U.S. 252, 260–61, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989). Upon consideration of the difficulties attendant to the delineation of in-state income or value via geographic or transactional accounting,[9] the Supreme Court has concluded that the Commerce and Due Process Clauses afford the states latitude to include multijurisdictional income/value within a corporation's tax base, provided that certain governing conditions are satisfied. *See Container Corp.,* 463 U.S. at 164–65, 103 S.Ct. at 2940, *cited in Unisys,* 726 A.2d at 1100–01. As recognized by the Commonwealth Court, the requirement primarily here at issue is fair apportionment of a unitary business enterprise. *See id.*[10]

■■■■ This requirement is comprised of two interrelated concepts. First, in order for a state to assess multijurisdictional income/value (including that which is attributable to subsidiary corporations), the Supreme Court has determined that the taxpayer must be part of a unitary business enterprise, assessed primarily according to the degree of functional integration, centralization of management, and economies of

relevant, unitary business principles occurred in the value tax context. *See Allied–Signal, Inc. v. Director, Div. of Taxation,* 504 U.S. 768, 779, 112 S.Ct. 2251, 2258, 119 L.Ed.2d 533 (1992); *Jefferson Lines,* 514 U.S. at 181–83, 115 S.Ct. at 1336–37.

9. *See Container Corp.,* 463 U.S. at 164–65, 103 S.Ct. at 2940 ("The problem with this method is that formal accounting is subject to manipulation and imprecision, and often ignores or captures inadequately the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise.").

10. The full criteria presently governing the imposition of state taxes on the instrumentalities of interstate commerce are set forth in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and permit such taxation when:

the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state.

*Id.* at 279, 97 S.Ct. at 1079; *see also Exxon Corp. v. Wisconsin Dep't of Revenue,* 447 U.S. 207, 219–20, 100 S.Ct. 2109, 2117–18, 65 L.Ed.2d 66 (1980) (quoting *Mobil Oil,* 445 U.S. at 436–37, 100 S.Ct. at 1231).

scale arising from its inter-entity dynamics. *See Unisys*, 726 A.2d at 1100 (describing a unitary business enterprise as "an enterprise which carries out distinct multijurisdictional activities resulting in ultimate profit or value derived from the entire business operation" (citing *Container Corp.*, 463 U.S. at 165, 103 S.Ct. at 2940)).[11] Second, while a state may therefore take interstate income or value into account in evaluating the tax liability of a unitary business enterprise, it must nevertheless make a sufficient attempt to identify the portion of the total which is fairly attributable to in-state business activity, or, in other words, to apportion the income/value prior to taxation. *See Unisys*, 726 A.2d at 1100–01 ("The functional meaning of [the unitary business enterprise] requirement is that there be some sharing or exchange of value not capable of precise identification or measurement ... which renders formula apportionment a reasonable method of taxation." (quoting *Container Corp.*, 463 U.S. at 166, 103 S.Ct. at 2933)).[12]

■ The *Unisys* majority proceeded to discuss the substantial difficulty in apportionment with respect to a corporation

11. *See also Allied–Signal*, 504 U.S. at 783, 112 S.Ct. at 2260 (stating that "the constitutional test focuses on functional integration, centralization of management, and economies of scale"); *Container Corp.*, 463 U.S. at 166, 103 S.Ct. at 2941 (recognizing breadth of unitary business principle and that it could apply "not only to vertically integrated enterprises, but also to a series of similar enterprises operating separately in various jurisdictions but linked by common managerial or operational resources that produced economies of scale and transfers of value"). As noted, the parties here agree that Unisys and its subsidiaries function as a unitary business enterprise.

12. As elaborated by the Supreme Court in *Container Corp.*:

The unitary business/formula apportionment method is a very different approach to the problem of taxing businesses operating in more than one jurisdiction. It rejects geographical or transactional accounting and instead calculates the local tax base by first defining the scope of the unitary business of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that unitary business between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction.

*Container Corp.*, 463 U.S. at 164–65, 103 S.Ct. at 2940; *see also Allied–Signal*, 504 U.S. at 783, 112 S.Ct. at 2260; *Mobil Oil*, 445 U.S. at 438, 100 S.Ct. at 1232.

conducting business through subsidiaries and in multiple juris-
dictions. *See id.* at 1100 (citing *Container Corp.*, 463 U.S. at
164, 103 S.Ct. at 2939 (observing that in the case of a more-or-
less integrated business enterprise operating in more than one
State, . . . arriving at precise territorial allocations of 'value' is
often an elusive goal)); *cf. id.* at 192, 103 S.Ct. at 2954
([a]llocating income among various taxing jurisdictions bears
some resemblance . . . to slicing a shadow); *International
Harvester Co. v. Evatt*, 329 U.S. 416, 422, 67 S.Ct. 444, 447, 91
L.Ed. 390 (1947) ("this Court has long realized the practical
impossibility of a state's achieving a perfect apportionment of
expansive, complex business activities such as those of appel-
lant"). Therefore, the Supreme Court has determined that a
'rough approximation rather than precision' is sufficient to
satisfy constitutional demands, so long as the formula used for
apportionment appears designed to tax only the value of
intrastate business activities. *See id.* at 422, 67 S.Ct. at 447
(quoting *Illinois Central Ry. Co. v. Minnesota*, 309 U.S. 157,
161, 60 S.Ct. 419, 422, 84 L.Ed. 670 (1940)). *See generally
Unisys*, 726 A.2d at 1100 (observing that "states must often
resort to the use of formulas based upon more readily ascer-
tainable measures of the corporation's activities within and
without the state in order to apportion the taxes"). The
Commonwealth Court majority thus recognized that, pursuant
to Supreme Court precedent, the authority of states to devise
various methodologies for assessing intrastate value or income
is broad. *See Allied–Signal*, 504 U.S. at 784, 112 S.Ct. at 2261
(explaining that "our cases give States wide latitude to fashion
formulae designed to approximate the in-state portion of value
produced by a corporation's truly multistate activity"); *Nor-
folk & W. Ry.*, 390 U.S. at 327, 88 S.Ct. at 1002 (noting that
"broad tolerance [is] permitted").

In consideration of the constitutional requirement of fair-
ness in apportionment, the *Unisys* majority noted that the
Supreme Court had repeatedly upheld the constitutionality of
a three-factor apportionment formula, going so far as to
describe it as something of a benchmark against which other
apportionment formulas are judged. *Unisys*, 726 A.2d at 1101
(quoting *Container Corp.*, 463 U.S. at 170, 103 S.Ct. at 2943).

The majority distinguished Unisys's arguments, however, as attacking, not the formula itself, but rather, the Department's use in the calculation of payroll, property, and sales data of only the parent corporation. *See Unisys,* 726 A.2d at 1101 (The essence of Unisys' argument on appeal is that it is fundamentally unfair for the Department to include as income the dividends Unisys received from its subsidiaries and as net worth the value of its investments in the subsidiaries when calculating the actual value of the corporation, but not to include its subsidiaries' property, payroll and sales in the apportionment formula.). In this respect, the *Unisys* majority credited the sound logic underlying factor representation. *See Unisys,* 726 A.2d at 1101 (Since the purpose of the formula is to apportion the value of the unitary business enterprise among different jurisdictions, it can hardly be subject to dispute that an apportionment formula which includes data from the entire enterprise will yield a more accurate result than a formula based solely upon the parent corporation's operations.). It recognized, nonetheless, that the General Assembly is not necessarily required to implement the most consistent, accurate, or preferred formula, but rather, the question before the court was whether factor representation was constitutionally required. *See id.* The majority acknowledged the position taken by Justice Stevens in his dissent in *Mobil Oil* to the effect that factor representation is in fact mandated by constitutional principles;[13] however, it also noted that the reasoning applied in a number of state court decisions would support a contrary result, at least insofar as they have rejected a *per se* or bright line test in the traditional due process analysis. *See Unisys,* 726 A.2d at 1101.[14]

**13.** The majority quoted Justice Stevens as follows:
Either Mobil's worldwide petroleum enterprise, . . . is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner. As it is, it has indefensibly used the apportionment methodology artificially to multiply its share of Mobil's 1970 taxable income.
*Mobil Oil,* 445 U.S. at 461, 100 S.Ct. at 1234 (Stevens, J., dissenting), *cited in Unisys,* 726 A.2d at 1101.

**14.** The Commonwealth Court cited *E.I. Du Pont de Nemours & Co. v. State Tax Assessor,* 675 A.2d 82, 88–91 (Me.1996), *NCR Corp. v. Com-*

The *Unisys* majority then narrowed its inquiry, focusing upon the two-part test crafted by the United States Supreme Court for determining whether an apportionment formula comports with constitutional fairness precepts—in this regard, the Court has indicated that an apportionment scheme will be sustained if it is internally and externally consistent. *See Unisys*, 726 A.2d at 1101–02 (citing *Container Corp.*, 463 U.S. at 169, 103 S.Ct. at 2942). The internal consistency assessment seeks to determine whether, on its face, the apportionment formula is reasonably calculated to reach only the profits earned within the state, or, in other words, that the formula is not inherently arbitrary. *See id.* The Commonwealth Court described external consistency as looking to the practical effect of the formula. *See Unisys*, 726 A.2d at 1102. Under this branch of the analysis, a reviewing court will disallow application of an apportionment scheme if the taxpayer shows that the taxable value attributed to the state 'is in fact out of all appropriate proportion to the business transacted ... in that state, or has led to a grossly distorted result.' *Container Corp.*, 463 U.S. at 170, 103 S.Ct. at 2942 (quoting *Moorman*, 437 U.S. at 274, 98 S.Ct. at 2345, in turn quoting *Hans Rees'*, 283 U.S. at 135, 51 S.Ct. at 389, and *Norfolk & W. Ry.*, 390 U.S. at 326, 88 S.Ct. at 1001); *see also Exxon*, 447 U.S. at 223, 100 S.Ct. at 2118.

The Commonwealth Court majority then characterized Unisys's appeal as predicated upon external consistency and reviewed a series of United States Supreme Court cases concerning that precept. It began by noting that, in *Hans Rees'*, the Supreme Court disapproved taxation under a single-factor method where the foreign corporation demonstrated that, while approximately eighty percent of its income was allocated to North Carolina under the apportionment formula, less than twenty-two percent of the corporation's income actually had its source in the corporation's operations within North Carolina. *See Unisys*, 726 A.2d at 1102 (Thus, a more

*missioner of Revenue*, 438 N.W.2d 86, 93 (Minn.1989), and *American Tel. and Tel. Co. v. Department of Revenue*, 143 Wis.2d 533, 422 N.W.2d 629, 636–37 (Ct.App.1988).

than 250% difference between an assessment calculated under a state's apportionment formula and the amount of income actually attributable to a corporation's operations carried on within a state is outside the allowable margin of error, and therefore offends due process. (citing *Hans Rees'*, 283 U.S. at 135–36, 51 S.Ct. at 389–90)). Similarly, the court reviewed the disposition in *Norfolk & W. Ry.*, 390 U.S. at 317, 88 S.Ct. at 995, also observing that a one-hundred sixty-six percent difference in tax due under a state's apportionment formula and under a formula using actual values is also outside the permissible margin of error. *See Unisys*, 726 A.2d at 1102–03. The majority contrasted two decisions of the Supreme Court in which fourteen and forty-eight percent discrepancies asserted by taxpayers were deemed to be constitutionally acceptable. *See id.* at 1103 (citing *Container Corp.*, 463 U.S. at 183–84, 103 S.Ct. at 1949–50; *Moorman*, 437 U.S. at 280–81, 98 S.Ct. at 2348). Against this background, the *Unisys* majority reasoned as follows:

> Applying the principles of these cases, we conclude that Unisys has not demonstrated a due process violation. Unisys can claim only that were the total property, payroll and sales of the unitary business enterprise included in the fractions of the three-factor formula, its tax due would be approximately 44.5% less than the figure arrived at by the Board in its calculation under the three-factor formula set forth in the Tax Code. We do not believe that a 44.5% disparity between calculations lies outside of the constitutional margin of error delineated by the Supreme Court. A 44.5% disparity is not even remotely close to the 266% and 300% disparities cited by the Court as unconstitutional in *Norfolk & Western Railway* and *Hans Rees' Sons*, and is somewhat less than the variance upheld in *Moorman*.

*Unisys*, 726 A.2d at 1103.

Having thus concluded its constitutional analysis favorably to the Board, the majority moved to Unisys's contention that it was entitled to statutory equitable relief pursuant to the special apportionment provision set forth in Section 401(3)2.(a)(18) of the Tax Code, 72 P.S. § 7401(3)2.(a)(18),

which the court described as affording the Department "broad discretion to make appropriate adjustments where any substantial inaccuracy results from application of the allocation and apportionment provisions." *Unisys*, 726 A.2d at 1104. Distinguishing constitutional from statutory unfairness, the majority had little difficulty determining the forty-four and one-half percent variance asserted by Unisys required a remedy under the special apportionment provision. *See id.* ("Even giving due deference to the Department's interpretation of the statute, we simply cannot say that an allocation so far at variance 'fairly represents the extent of [Unisys's] business activity in this State.'"). In this regard, as it did in its constitutional inquiry, the majority again accepted the benchmark figures supplied by Unisys as its reference and the fact and amount of the percent disparity.[15] In view of the above, the Commonwealth Court remanded to the Board for implementation of statutory relief.

Direct cross-appeals to this Court followed, which raise primarily legal questions, open to this Court's plenary consideration.

Presently, Unisys maintains its argument that, in settling its franchise tax liability for the years in question, the Department ascribed to it a unitary tax base. Unisys does not dispute its status as a unitary business enterprise, or contest Pennsylvania's ability to measure the value of its franchise as

15. The majority took care to emphasize that it was not requiring the inclusion of subsidiaries' data in three-factor formula apportionment in all cases. *See Unisys*, 726 A.2d at 1105 ("The statute gives broad discretion to the Department to use any method which will produce a fair and equitable result, and we will not here limit the method the Department may use[;][w]e hold only that some form of Subsection (18) relief must be accorded.").

In dissent, Judge Pellegrini expressed his view that, in order for relief to be required under the statutory fair apportionment provisions, there must be an unfair and unconstitutional allocation and apportionment of the foreign corporation's income that does not fairly represent its actual business activity in the State. *See Unisys*, 726 A.2d at 1108 (Pellegrini, J., dissenting). Since Judge Pellegrini agreed with the majority's conclusion that Unisys had failed to establish a constitutional violation, by his reasoning it followed that no statutory relief was due. Judge Doyle also dissented, but without opinion.

such in the first instance. Rather, it rejects the apportionment of an asserted unitary tax base according to factors attributable to the parent corporation only. In this regard, Unisys emphasizes that the justification provided in *Container Corp.* and its progeny for permitting states to aggregate interstate value for purposes of taxation depends integrally upon the out-of-state portion being reasonably "apportioned away" prior to arriving at a taxable value, such that the taxing state can ultimately be said to be fairly reaching only value reasonably attributable to business activities within its borders. Where a tax base is determined on a unitary basis, in Unisys's estimation, constitutional fairness principles require that the apportionment fraction must be unitary as well, and therefore, rationally related to, and consistent with, the tax base that it seeks to divide. According to Unisys, a structural "mismatch" between valuation and apportionment methodologies is not only irrational but also produces an inherent and impermissible distortion in segregating value. Unisys asserts that the methodology resulted in an overstatement of the value attributable to its Pennsylvania business activities on the order of some forty-five percent and maintains that the distortion is inimical to the salient constitutional fairness principles regardless of the degree of numerical disparity in tax liability produced. In support of its primary argument, Unisys cites to decisions of the appellate courts in Maine, Wisconsin, and New York. *See Du Pont,* 675 A.2d at 89 (citing *Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039, 1044–45 (Me.1991), *overruled in part, DuPont,* 675 A.2d at 88–89); *American Tel. & Tel. Co. v. Wisconsin Dep't of Revenue,* 143 Wis.2d 533, 422 N.W.2d 629, 634–36 (Ct.App.1988); *People v. Knapp,* 230 N.Y. 48, 129 N.E. 202, 206 (1920). Further, Unisys claims that the statutory fair apportionment provision requires an identical result, again, consistent with the decisions of other state appellate courts. *See, e.g., Homart Dev. Co. v. Norberg,* 529 A.2d 115, 121 (R.I.1987); *NCR Corp. v. Comptroller of Treasury,* 313 Md. 118, 544 A.2d 764, 781 (1988).

The Board disagrees fundamentally with Unisys's position that the franchise tax base assessment is unitary in character.

To the contrary, it contends, the aspects of the formula that capture consolidated worth are included merely as a "valuation device" used to measure taxpayers' in-state business activities. In this regard, the Board emphasizes that the average net income component of the tax base assessment is calculated on an unconsolidated basis, with dividends from subsidiaries included only as an appropriate item of income to the taxpayer. Thus, in the first instance, the Board advances its view that factor representation in apportionment is not required in the Pennsylvania scheme even assuming the correctness of Unisys's core argument that consolidated valuation would require it in theory. The Board emphasizes its position that the Department's settlements concerning Unisys's franchise tax liability are consistent with application of the internal and external consistency tests fashioned by the United States Supreme Court, and that Unisys has failed to meet its burden of establishing that the apportionment fractions ascribed do not fairly reflect the extent of Unisys's business activities in the Commonwealth. The Board also posits that the availability of an alternate, elective method for calculating franchise tax liability ameliorates any unfairness that might otherwise be attributed to apportionment via the three-factor method. Finally, the Board maintains that statutory relief is not warranted because the only evidence of unfairness in the record stems from Unisys's alternative apportionment formula, which is neither mandated by the statute nor grounded in sound theory. According to the Board, the statutory fair apportionment provision is to be used only in extraordinary circumstances and to avoid constitutional infractions, neither of which is present here.

█ In considering whether factor representation is required in Pennsylvania franchise tax apportionment, we begin with the question of legislative interpretation, namely, whether the Department's practice of apportioning solely with reference to the parent company's property, payroll, and sales factors is a reasonable interpretation of the taxing statute. As noted, the Tax Code requires apportionment of the franchise tax base according to factors attributable to the "taxpayer."

*See* 72 P.S. § 7401(3)2.(a)(10), (12), (13). While the term "taxpayer" is not specifically defined by the statute, its use in context favors the Department's interpretation that it does not include subsidiary corporations. For example, Section 601 of the Tax Code defines "subsidiary corporation" in terms of majority ownership by "the taxpayer corporation." *See* 72 P.S. § 7601. The Department's interpretation is also supported by the weight of authority from other jurisdictions considering similar provisions. *See, e.g., NCR Corp. v. Taxation and Revenue Dep't,* 115 N.M. 612, 856 P.2d 982, 985 (Ct.App.1993) (concluding that "[i]n this case the 'taxpayer' is NCR, not its foreign subsidiaries"); *NCR Corp. v. South Carolina Tax Comm'n,* 304 S.C. 1, 402 S.E.2d 666, 669 (1991) (same); *NCR Corp. v. Commissioner of Revenue,* 438 N.W.2d 86, 89–90 (Minn.1989); *NCR Corp. v. Comptroller,* 313 Md. 118, 544 A.2d 764, 777 (1988). *But see American Tel. & Tel.,* 422 N.W.2d at 632; *Kellogg Co. v. Herrington,* 216 Neb. 138, 343 N.W.2d 326, 332 (1984). Given the reasonableness of the Department's administrative interpretation, and in keeping with the deference owed it in this regard, *see Jay R. Reynolds, Inc. v. Department of Labor and Indus., Prevailing Wage Appeals Bd.,* 661 A.2d 494, 497 (Pa.Cmwlth.1995), we will not disturb such interpretation in the absence of sufficient proof of a constitutional violation.

Concerning the constitutional questions presented by Unisys, the Commonwealth Court majority provided a detailed and correct overview of the unitary business enterprise concept and the corresponding requirement of fair apportionment, as summarized above. It is noteworthy, however, that the United States Supreme Court has not fully developed the contours of permissible apportionment as concerns multi-jurisdictional, affiliated corporations. Moreover, the Supreme Court's overall treatment of the guiding principles has been described as lacking concreteness by commentators, as well as by the Court itself.[16] Of particular relevance here, the Su-

16. *See, e.g., Quill Corp. v. North Dakota,* 504 U.S. 298, 315, 112 S.Ct. 1904, 1915, 119 L.Ed.2d 91 (1992) (stating that our law in this area is something of a 'quagmire,' in describing Supreme Court jurisprudence

preme Court has expressly left open questions concerning the necessity of factor representation in apportionment. *See Mobil Oil,* 445 U.S. at 441 n. 15, 100 S.Ct. at 1233 n. 15.

 The United States Supreme Court, nevertheless, has channeled the inquiry through the application of its internal and external consistency tests. *See Jefferson Lines,* 514 U.S. at 185, 115 S.Ct. at 1338 ("For over a decade now, we have assessed any threat of malapportionment by asking whether the tax is 'internally consistent' and, if so, whether it is 'externally consistent' as well" (citations omitted)); *Goldberg,* 488 U.S. at 261, 109 S.Ct. at 589 ("we determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent"). As recognized by the Commonwealth Court, an apportionment method is considered internally consistent if, in a hypothetical application by all taxing jurisdictions, no more than one hundred percent of the unitary business's income or value is taxed. *See Container Corp.,* 463 U.S. at 169, 103 S.Ct. at 2942 (recognizing that the internal consistency standard is satisfied where the formula, if applied by every jurisdiction ... would result in no more than all of the unitary business's income being taxed). Presently, however, Unisys has not attempted to demonstrate that exclusion of the subsidiaries' income-producing activities in the denomina-

regarding constitutional limitations upon state taxation); *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 457–58, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959) ("application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation"); Ferdinand P. Schoettle, *Big Bucks, Cloudy Thinking: Constitutional Challenges to State Taxes Illumination from the GATT,* 19 Va. Tax. Rev. 277, 281–82 (Fall 1999) (summarizing the relevant critical commentary). Justices have opined that legislative action may be necessary in order to implement a wholly adequate solution. *See Moorman,* 437 U.S. at 279–80, 98 S.Ct. at 2347–48; *see also ASARCO Inc. v. Idaho State Tax Comm'n,* 458 U.S. 307, 352–53, 102 S.Ct. 3103, 3127–28, 73 L.Ed.2d 787 (1982) (O'Connor, J., dissenting). In this regard, commentators have advocated the use of uniform tax bases and apportionment rules, *see, e.g.,* Kathryn L. Moore, *State and Local Taxation of Interstate and Foreign Commerce: The Second Best Solution,* 42 Wayne L.Rev. 1425, 1467–68 (Spr.1996), as well as the use of combined accounting procedures. *See generally* Oliver Oldman and Richard D. Pomp, *State Corporate Taxes,* 491 PLI/Tax 291, 323–26 (Mar.-Apr.2001).

tor of Pennsylvania's apportionment formula would result in more than all of its income being taxed.[17] Moreover, the Pennsylvania formula as applied by the Department plainly meets the internal consistency test, since if every taxing jurisdiction applied the formula, no more than all of the value of the unitary business would be taxed, as each item of property, payroll, and sales of the parent corporation represented in the numerator of the apportionment fraction can be attributable to only one jurisdiction. *Accord Du Pont*, 675 A.2d at 89.

■■■ As frequently emphasized in the commentary, the internal consistency test constitutes a minimal check on theoretical weaknesses of apportionment schemes. *See, e.g.,* Moore, *State and Local Taxation,* 42 Wayne L.Rev. at 1453 (The internal consistency test, in the fair apportionment context, is unexceptional and does little more than serve as a check against blatant multiple taxation in theory. (citation omitted)). The degree to which the Supreme Court intends for external consistency to serve as an additional gauge for theory, as opposed to merely a final check on application of apportionment formulae, is unclear. Certainly, in various

17. Rather, as concerns internal consistency, Unisys asserts primarily that the Pennsylvania franchise tax statute, viewed in tandem with the taxing schemes of other jurisdictions, results in multiple taxation. *See* Unisys brief at 39 ("The net worth of all subsidiaries is taxed once as part of the capital stock of the parent and a second time as a part of the capital stock value of those subsidiaries taxable in Pennsylvania or another state."). The internal consistency test, however, is a narrow one focused solely upon the structure of the taxing scheme in question. *See Goldberg,* 488 U.S. at 261, 109 S.Ct. at 589 ("If we were to determine the internal consistency of one State's tax by comparing it with slightly different taxes imposed by other States, the validity of state taxes would turn solely on 'the shifting complexities of the tax codes of 49 other States[;]' [i]n any event, to the extent that other States have passed tax statutes which create a risk of multiple taxation, we reach that issue under the external consistency test[.]" (citation omitted)). *See generally Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 185, 115 S.Ct. 1331, 1338, 131 L.Ed.2d 261 (1995)(This [internal consistency] test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate.).

instances of its descriptions touching upon the test, the Court has sometimes spoken in terms of theory.[18] The Court has also recognized, however, that "[e]very method of allocation devised involves some degree of arbitrariness." *Barclays Bank PLC v. Franchise Tax Bd.*, 512 U.S. 298, 303, 114 S.Ct. 2268, 2272, 129 L.Ed.2d 244 (1994).[19] Indeed, in application, the Court's focus in determining external consistency has fairly regularly been upon result, namely, the degree of disparity between taxation under the state's apportionment scheme versus the outcome pursuant to some more "neutral" measure or baseline. *See, e.g., Container Corp.*, 463 U.S. at 182–84, 103 S.Ct. at 2949–50; *Moorman*, 437 U.S. at 272–75, 98 S.Ct. at 2344–45. Further, the Supreme Court has also employed definitive terms to indicate that the external consistency test is an outcome-based assessment. *See, e.g., Goldberg*, 488 U.S. at 264, 109 S.Ct. at 590 ("It should not be overlooked . . . that the external consistency test is essentially a practical inquiry."); *Container Corp.*, 463 U.S. at 170, 103 S.Ct. at 2942 (couching the relevant inquiry in terms of taxable value which 'is in fact out of all appropriate proportion to the business transacted . . . in that state,' or has 'led to a grossly distorted result' (citations omitted)); *International Harvester*, 329 U.S. at 422–23, 67 S.Ct. at 447 ("Unless a palpably disproportionate result comes from an apportionment, a result which makes it patent that the tax is levied upon interstate commerce rather than upon an intrastate privilege, this Court has not been willing to nullify honest

18. *See, e.g., Container Corp.*, 463 U.S. at 169, 103 S.Ct. at 2942 (indicating that the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated); *General Motors Corp. v. District of Columbia*, 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68 (1965) (observing that the Court "has sought to ensure that the methods [of apportionment] used display a modicum of reasonable relation to corporate activities within the State"); *Norfolk & W. Ry.*, 390 U.S. at 325, 88 S.Ct. at 1001 ("Any formula used must bear a rational relationship, both on its face and in its application, to property values connected with the taxing state." (citation omitted)).

19. *Accord* Daniel N. Shaviro, *State and Local Taxation: The Current Judicial Outlook*, 22 Cap. U.L.Rev. 279, 287 (Spr.1993) ("[I]t is impossible, from an economic standpoint, to ascribe a definite location to income or value.").

state efforts to make apportionments."). *See generally Moorman*, 437 U.S. at 273, 98 S.Ct. at 2344 ("despite ... imprecision, the Court has refused to impose strict constitutional restraints on a State's selection of a particular formula"). Notably, the Commonwealth Court majority's percentage-oriented assessment of external consistency, *see Unisys*, 726 A.2d at 1102–03, represents a fairly typical application.

■ The challenge facing the Supreme Court has clearly been to allow the states sufficient latitude to surmount the complexities involved in the taxation of multijurisdictional entities while at the same time safeguarding against overreaching by any individual state.[20] We conclude that the balance struck by the Court restricts the impact of theoretical attacks upon all but the most arbitrary of formulae by generally limiting the inquiry to the relatively minimal test for internal consistency, while preserving the opportunity for taxpayers to more meaningfully challenge apportionment applications by demonstrating a substantial disparity between the tax burden imposed upon them and some reasonable baseline measure. *Accord Container Corp.*, 463 U.S. at 182–83, 103 S.Ct. at 2949 (observing that "[s]ome methods of formula apportionment are particularly problematic because they focus on only a small part of the spectrum of activities by which value is generated" but noting that "we have generally upheld the use of such formulas" in the absence of "distortive effect[s]" that were "so outrageous ... as to require reversal").[21]

20. In this regard, we are cognizant of the particular difficulty facing the Commonwealth as concerns a value-oriented tax. Many of the cases cited by the parties concern the taxation of corporate income, in which instance the income-based tax base is more readily quantifiable than the value of capital. *See Norfolk & W. Ry.*, 390 U.S. at 324, 88 S.Ct. at 1000 ("Going-concern value, of course, is an elusive concept not susceptible of exact measurement."). In the case of a value tax, therefore, the heightened complexities span both valuation and apportionment. Indeed, to the extent that the *Container Corp.* Court's likening of apportionment of income to slicing a shadow is accurate, *see Container Corp.*, 463 U.S. at 164, 103 S.Ct. at 2939, the apportionment of value might be fairly analogized to slicing vapor.

21. We acknowledge that some courts would appear to have moved beyond review for internal and external consistency as interpreted

 In order to provide a predicate for assessment of external consistency, therefore, a taxpayer must establish a proper baseline. In the complex field of constitutional restraints on state taxation of multijurisdictional commerce, the dollar figures presented by the parties for comparison have not been predicated upon any uniform set of parameters from which percentage-based comparisons can be easily drawn across cases. The large discrepancies at issue in *Hans Rees' Sons* and *Norfolk & W. Ry.*, for example, involved the difference between the tax due and that which would have been owed had the taxing authority taken into account the underlying economic realities specific to the unique circumstances of the aggrieved taxpayer. In *Container Corp.*, on the other hand, the relatively small discrepancy at issue arose when the taxpayer chose to compute its tax liability based upon an

above, applying more exacting review of the theoretical underpinnings of apportionment formulae. *See, e.g., Tambrands,* 595 A.2d at 1044. In dissent, Mr. Justice Nigro appears to adopt such an approach, and, as one indication that the apportionment formula is constitutionally infirm he posits that a corporation's tax liability could, in a hypothetical case, increase even as its in-state factors decrease. *See* Dissenting Opinion, at 470 (Nigro, J.). To support his conclusion of facial unconstitutionality, moreover, he cites to *PPG Industries, Inc. v. Board of Finance and Revenue,* 567 Pa. 580, 790 A.2d 261 (2001) (*PPG II*), in which the Court found that the manufacturing exemption's headquarters subfactor facially discriminated against interstate commerce. *See* Dissenting Opinion, at 471–72 (Nigro, J.). It should be noted, however, that, pursuant to the headquarters formula, PPG's tax liability would always increase if PPG were to move or expand operations out-of-state. *See PPG Industries, Inc., v. Board of Finance and Revenue,* 567 Pa. 565, 575–76, 790 A.2d 252, 258 (1999) (*PPG I*). Thus, the scheme provided a positive incentive for PPG to conduct business within the Commonwealth and penalized the company for expanding such activities out-of-state, thereby running afoul of the prohibition on discrimination against interstate commerce under *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977), and its progeny. *See PPG I,* 567 Pa. at 575–76, 790 A.2d at 258. *See generally PPG II,* 567 Pa. at 600, 790 A.2d at 273 (Saylor, J., dissenting). Here, by contrast, there is no similar incentive to shift operations either in-state or out-of-state, and hence, no facial discrimination against interstate commerce. Given the imprecision inherent in virtually any attempt to tax the in-state value of a multi-jurisdictional enterprise, the mere fact that one can propose a hypothetical scenario in which the taxpayer's liability increases while its in-state activities diminish, with no causal connection between the two, is an insufficient basis for a finding of facial unconstitutionality.

alternate method that did not reflect the unitary nature of its business. And in *Moorman*, the forty-eight percent discrepancy represented the difference between two admittedly reasonable apportionment schemes tied to different economic indicators. Although it is therefore clear that different measures may be employed, it is appropriate in all cases as a threshold matter to consider the reasonableness of the method or methods presented by the taxpayer to arrive at a baseline measure.

Here, Unisys has presented a single approach which treats its tax base as wholly unitary and reflects full factor representation in apportionment—in other words, Unisys has added the full property, payroll, and sales figures of its subsidiary corporations to the denominator of the apportionment fraction. Further, it has presented raw data coupled with bottom-line figures that are detached from the data by the admonition that unquantified adjustments have been made to account for undisclosed exemptions/exclusions.[22] In order to determine the reasonableness of Unisys's approach, it is therefore necessary to consider whether Unisys is correct that the tax base is wholly unitary, such that full factor representation in apportionment will produce an appropriate measure of in-state value. In this regard, the Department argues that such a baseline is unreasonable, since the tax base is not a unitary or consolidated one.

Contrary to the Department's argument, it is apparent that there are unitary aspects to the tax base, as, for example, capital stock value takes into account consolidated net worth. *See* 72 P.S. § 7601(a). It is important to observe too, however, as the Department also emphasizes, that the average net income component of value is assessed on an unconsolidated basis prior to capitalization. *See id.*[23] While dividends from

22. This manner of presentation, as well as the absence of additional descriptive data such as the net average income/profits of subsidiary corporations, *see infra*, substantially constrains a reviewing tribunal in terms of its ability to assess fairness in application of the taxing statute other than strictly on the terms dictated by the taxpayer.

23. Although Pennsylvania thus hybridizes consolidated and unconsolidated factors in determining the franchise tax base, such approach is

subsidiaries are included in taxpayer average net income, and this may be viewed as one measure of consolidated value, the more common and broader measure of value attributable to subsidiaries, namely, the net income or profits of subsidiaries, is not assessed under the statute. Considering similar circumstances, other jurisdictions have made adjustments to the denominator of the apportionment fraction to ensure that the value imputation due to dividends from subsidiaries is not overstated. For example, the "Detroit formula," applied in some jurisdictions, includes in the denominator only a portion of subsidiary factors based on the ratio of dividends received from subsidiary corporations to the subsidiaries' total net income or profits.[24] As explained by several courts in evaluating a similar paradigm:

> [i]t may not be unreasonable to suggest that inclusion of subsidiaries' dividends in the apportionable income [of NCR] should be balanced by some change in the formula denominator. But the balancing should not be done by including the total property, sales, and payroll values.... Instead, the denominators should be modified by including only those percentages of the foreign subsidiaries' property, payroll, and sales that generated the foreign subsidiary dividend income taxed by Maryland.

*NCR Corp. v. South Carolina Tax Comm'n,* 304 S.C. 1, 402 S.E.2d 666, 673–74 (1991) (quoting *NCR Corp. v. Comptroller of the Treasury,* 313 Md. 118, 544 A.2d 764, 781 (1988)).[25]

not wholly aberrant. *See Container Corp.,* 463 U.S. at 168 n. 5, 103 S.Ct. at 2942 n. 5 (recognizing that "[s]ome States, it should be noted, have adopted a hybrid approach").

**24.** *See* 14A FLETCHER CYCLOPEDIA OF PRIVATE CORP. § 6970 (2000) ("the 'Detroit formula' ... operates to reduce state's apportioned share of multijurisdictional taxpayer's taxable income base by adding a portion of property, payroll, and sales of dividend-producing foreign subsidiaries, determined by dividing net dividends that parent corporation receives from foreign subsidiaries by those subsidiaries' total net profit, into the denominators of the portions of parent corporation's property, payroll, and sales attributable to in-state value under the Uniform Division of Income for Tax Purposes Act, thus lowering the UDITPA fractional multiplier used against taxpayer's total income and thereby its state taxable income base.").

**25.** While the tax at issue in *NCR Corp.* was a corporate income tax, similar overstatement of the contribution of subsidiaries to the parent

Indeed, in some cases, in their attempts to establish a baseline by which to adjudge external consistency, taxpayers have acknowledged the inherent reasonableness of adjusting the apportionment formula to account for retained income or profits of subsidiaries. *See Tambrands*, 595 A.2d at 1042 n. 4 ("Tambrands' position is that included in the denominators of the apportionment formula factors should be the same percentage of property, sales and payroll of each Foreign Affiliate as the percentage of net income that each Foreign Affiliate paid in dividends to Tambrands.").[26]

It is also noteworthy that, in the Pennsylvania formula for calculation of the tax base, net worth of the unitary enterprise is reduced by twenty-five percent (which reduction subsumes a reduction of worth attributable to both parent and subsidiary corporations), *see supra* note 5, thus adding substantially to the "margin of error" for purposes of the constitutional assessment. *See Container Corp.*, 463 U.S. at 184, 103 S.Ct. at 2950. Unisys's numbers proffered reflecting full factor representation also fail to take this adjustment into account.[27] Some

company may occur in the value tax context due to the inclusion of full subsidiary property, payroll, and sales factors in apportionment in circumstances in which the capitalized dividends taken into account in determining the tax base represent merely a portion of the net income or profits of subsidiaries, some of which is retained.

**26.** *Accord Container Corp.*, 463 U.S. at 169 n. 7, 103 S.Ct. at 2942 n. 7 (recognizing as a substantial factor that "the State in that case included *dividends* from the subsidiaries to the parent in its calculation of the parent's apportionable taxable income, but did not include the underlying income of the subsidiaries themselves"); Walter Hellerstein, *State Taxation of Corporate Income from Intangibles: Allied–Signal and Beyond*, 48 TAX L.REV 739, 832 (Fall 1993) ("inclusion of 100% of the subsidiary's factors in the parent's apportionment formula would overstate the subsidiary's contribution to the parent's income if each dollar of payroll, property, and sales was presumed to bear the same relationship to the apportionable income it produced"); *id.* ("there are complicated issues bearing on the proper adjustment of the parent's factors to reflect fairly the subsidiary's contribution to the apportionable tax base that tend to be overlooked in the broad endorsements of the principle of factor representation").

**27.** Indeed, in tax years in which Unisys subsidiaries experienced negative average net income, the statutory adjustment and averaging process required as the means for computing capital stock value resulted in Unisys's pre-apportionment tax base being established at thirty-seven and one-half percent of net worth. (Seventy-five percent of net worth

additional latitude is also due in favor of the Commonwealth in Unisys's particular circumstance, since it maintains its headquarters in Pennsylvania, thereby demonstrating considerable Pennsylvania activity in the management and production of value. *Accord Maxland Dev. Corp. v. Director of Revenue,* 960 S.W.2d 503, 506 (Mo.1998) (Income arises partly from transactions in this state when the 'brains'—that plan, design, and direct a specialized operation in other states—are in Missouri. (citation omitted)).

While the inherent rationality of factor representation in apportionment cannot be disputed, neither can the need for a taxpayer, addressing a tax base that incorporates unitary aspects but is substantially hybridized and adjusted, to account for the methodology by which the tax base is calculated in establishing a baseline for purposes of external consistency assessment.

We also consider the Pennsylvania franchise taxation provisions that incorporate fair apportionment principles relevant to the constitutional inquiry. *See* 72 P.S. § 7401(3)2.(a)(18). Such provisions establish a statutory mechanism for equitable adjustment to the extent a taxpayer is able to demonstrate that the application of the tax is unconstitutionally (or perhaps otherwise) unfair, thus ameliorating due process concerns within the confines of the taxing scheme itself.[28] Further, regardless of whether statutory fair apportionment precepts sweep beyond the boundaries of constitutional fairness, we conclude that the General Assembly intended for it to be assessed, like external consistency, according to some mean-

plus zero average net income divided by two equals thirty-seven and one-half percent of net worth).

**28.** *Accord S.M.Z. Corp. v. Director, Div. of Taxation,* 193 N.J.Super. 305, 473 A.2d 982, 990 (App.Div.1984) (explaining, with respect to New Jersey's analog to Pennsylvania's statutory fair apportionment provisions, [i]t is undeniably clear that our Legislature enacted Section 8 to serve as a 'safety valve' in cases where the 'allocation factor' determined under Section 6 may produce an unconstitutional result); *cf. Moorman,* 437 U.S. at 275, 98 S.Ct. at 2345 ("The Iowa statute afforded appellant the opportunity to demonstrate that the single-factor formula produced an arbitrary result[;] [b]ut the record contains no such showing and therefore the [d]irector's assessment is not subject to challenge under the Due Process Clause.").

ingful reference point established by the taxpayer. Since we find that Unisys has failed to demonstrate the appropriateness of its proffered baseline figures, we also conclude that it has not demonstrated entitlement to relief under Section 401(3)2.(a)(18) of the Tax Code.[29]

■ In summary, Pennsylvania's scheme for taxation of foreign business franchises may be less than ideal and, absent statutory fairness adjustment, unconstitutional in some applications. Nevertheless, a taxpayer alleging Commerce and Due Process Clause violations bears a substantial burden to demonstrate by clear and cogent evidence that the state is taxing income earned outside its jurisdiction. *See Container Corp.*, 463 U.S. at 169–70, 103 S.Ct. at 2942–43. Here, Unisys has presented baseline figures predicated solely upon full factor representation of subsidiaries, while failing to establish an adequate correlation between the hybrid, adjusted tax base ascribed to it and factor representation on such terms. Pursuant to the standards crafted by the United States Supreme Court, we conclude, therefore, that Unisys has failed to carry

**29.** Mr. Justice Nigro faults the above reasoning for allegedly shifting to the taxpayer the burden to prove the unconstitutionality of the present taxing scheme by comparison with demonstrably reasonable baseline figures for the tax base. *See* Dissenting Opinion at 472 (Nigro, J.). As noted even by the dissent, however, the burden has always been on the taxpayer to demonstrate unconstitutionality by clear and cogent evidence. *See id.* at 467. In this regard, we are merely following the U.S. Supreme Court's lead in requiring, as a practical measure, that the taxpayer present the court with a valid and meaningful set of reference calculations against which to measure the alleged distortionate effects of the challenged taxing statute, once it is determined that the apportionment formula passes the internal consistency test. *Compare Container Corp.*, 463 U.S. at 181, 103 S.Ct. at 2948 (rejecting a claim of alleged unconstitutional distortion where the taxpayer's baseline figures were founded upon an accounting method suffering from basic theoretical weaknesses) *and Moorman*, 437 U.S. at 272, 276, 98 S.Ct. at 2344, 2346 (denying relief in part because taxpayer failed to proffer figures representing the actual profitability of in-state sales subject to the challenged tax) *with Hans Rees'*, 283 U.S. at 134–36, 51 S.Ct. at 389 (providing relief where, although the apportioning methodology was facially sound, the taxpayer adduced convincing reference figures indicating that its income attributable to in-state activities was well below that yielded by the taxing formula) *and Norfolk & W. Ry.*, 390 U.S. at 328, 88 S.Ct. at 1002 (same).

its heavy burden.[30] For much the same reasons, we reach the same result on consideration of the statutory fair apportionment provisions.

Accordingly, we reverse the Commonwealth Court's order and remand for reinstatement of the settlements as approved by the Board. Jurisdiction is relinquished.

Justice NIGRO files a dissenting opinion.

Justice NEWMAN files a dissenting opinion in which Justice CASTILLE joins.

Justice NIGRO dissenting.

In assessing the Pennsylvania franchise tax in the instant case, the Department of Revenue (Department) added the capital stock value of the parent corporation and more than 100 foreign subsidiary corporations in calculating the tax base. However, the Department then calculated Pennsylvania's share of the tax base, i.e., that portion attributable to business activity in this state, using an apportionment fraction composed of the property, payroll, and sales of only *one* corporation, the parent. Common sense suggests that this tax base/apportionment factor mismatch renders the taxing scheme fundamentally unfair and, in my view, unconstitutional. Accordingly, I must respectfully dissent.

The Pennsylvania franchise tax was designed to tax out-of-state corporations for the privilege of conducting business within Pennsylvania and is imposed on the capital stock value of a corporation. *See Clairol, Inc. v. Commonwealth, Bd. of*

---

**30.** Other courts have reached similar conclusions predicated upon the adequacy of the taxpayers' presentations. For example, one court framed the conclusion as follows:

> [W]e are unable to determine [from the record], in any meaningful way, the extent to which a reasonably structured formula ... might differ in its results from a formula which excludes that portion of the foreign subsidiary property, payroll, and sales which generated the dividend income. As a further consequence, we cannot tell whether disproportionality [a grossly distorted result] of constitutional proportions is present here.

*NCR Corp.,* 402 S.E.2d at 674 (quoting *NCR Corp.,* 544 A.2d at 781).

*Finance & Review,* 513 Pa. 74, 518 A.2d 1165 (1986).[1] Because a state may not constitutionally tax value earned outside of its borders, the capital stock of a multi-jurisdiction unitary enterprise must be apportioned so that Pennsylvania taxes only that portion of capital stock value attributable to the enterprise's business activities within the state. *See Container Corp. v. Franchise Tax Bd.,* 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). At the same time, the Due Process and Commerce Clauses of the U.S. Constitution do not allow a state to assess a tax on the interstate activities of an enterprise unless there is a nexus between the interstate activities and the taxing state, and a rational relationship between the portion of the tax base attributed to the taxing state and the intrastate values of the enterprise. *See* U.S. CONST. art. I, § 8, cl. 3; U.S. CONST. amend XIV, § 1; *Hunt–Wesson, Inc. v. Franchise Tax Bd. of California,* 528 U.S. 458, 463–64, 120 S.Ct. 1022, 145 L.Ed.2d 974 (2000) (citations omitted).[2] Although a state has wide latitude in fashioning an

1. In its simplest algebraic form, the Pennsylvania franchise tax is expressed as: *capital stock value* **x** *apportionment factor* **x** *statutory tax rate* = *tax due*. *See* 72 P.S. §§ 7601–7605. A corporation's capital stock value, i.e., the tax base, is determined by a fixed formula based on: (1) the corporation's net worth, (2) the net worth of any subsidiary of the reporting corporation, and (3) the corporation's average net income, which includes dividends received from its subsidiaries. *See* 72 P.S. § 7601(a); 61 Pa.Code § 155.26(a). The apportionment factor is computed by means of a statutory apportionment formula that averages three ratios: (1) the corporation's property within Pennsylvania to total property everywhere, (2) the corporation's payroll incurred in Pennsylvania to total payroll incurred everywhere, and (3) the corporation's sales within Pennsylvania to total sales everywhere. *See* 72 P.S. §§ 7602(b), 7401(3)2.(a)(9)(B), 7603. For the tax years in question, the tax rate was 10 mills. *See id.* § 7602.

2. *See also Allied–Signal, Inc. v. Director, Div. of Taxation,* 504 U.S. 768, 772, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (state may tax a proportionate share of the income of a nondomiciliary corporation that carries out a particular business both inside and outside that state); *Goldberg v. Sweet,* 488 U.S. 252, 260–61, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989) (central purpose behind apportionment requirement is to ensure that each state taxes only its fair share of interstate transactions); *Container Corp.,* 463 U.S. at 164, 169, 103 S.Ct. 2933 (state may not "tax value outside its borders"; due process requires fair apportionment of unitary business income); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) ("income attributed to the State for

apportionment formula, a formula will be held invalid where a taxpayer proves by clear and cogent evidence that the income attributed to the state is "out of all appropriate proportion to the business transacted by the [taxpayer] in that state," *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 135, 51 S.Ct. 385, 75 L.Ed. 879 (1931), that application of the formula has led to a grossly distorted result for a taxpayer in a particular case, *Norfolk & Western Ry. Co. v. Missouri State Tax Comm'n,* 390 U.S. 317, 326, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968), or that the apportionment scheme is "inherently arbitrary" or its application "produce[s] an unreasonable result," *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 274, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (quoting *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 121, 41 S.Ct. 45, 65 L.Ed. 165 (1920), and citing *Norfolk & Western Ry. Co. v. North Carolina ex rel. Maxwell,* 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977 (1936); *Bass, Ratcliff & Gretton v. State Tax Comm'n,* 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282 (1924)).

In the instant case, Unisys reported its average net income on a separate company, unconsolidated basis and therefore, did not include as income dividends it received from subsidiaries. Unisys likewise reported its net worth on a separate company, unconsolidated basis and apportioned its capital stock value using the statutory three-factor formula. In settling Unisys's franchise tax for the applicable years, the Department increased the amount reported by Unisys as net worth to include the value of Unisys's investments in its subsidiaries and increased the amount reported as average net income by adding the amount of dividends paid to Unisys by

tax purposes must be rationally related to values connected with the taxing State").

In essence, the three-factor apportionment formula represents a balance between a state's revenue raising taxation power and the taxpayer's right to be protected from extraterritorial taxation. *See Kraft General Foods, Inc. v. Iowa Dep't of Revenue,* 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992) (formula serves as mechanism for limiting state tax to the portion of income attributable to business activity within the state); *Container Corp.,* 463 U.S. at 170, 103 S.Ct. 2933 (even though the formula does not produce perfectly accurate taxable income figures, "it has become ... something of a benchmark against which other apportionment formulas are judged").

its subsidiaries. The Department then calculated Unisys's property, payroll and sales apportionment factors on a separate company basis, that is, the factors included only the property, payroll and sales of Unisys itself and not the property, payroll and sales of its subsidiaries. The Department's methodology in that regard was consistent with its practice of computing the apportionment factor by looking only at the activity of the reporting corporation.[3] On appeal here, Unisys claims that this tax base/apportionment factors "mismatch" offends due process notions of fairness and violates the constitutional requirement that a state tax levied upon a multijurisdictional business be rationally related to values connected to that state.

The majority concedes that the inherent rationality of factor representation in apportionment cannot be disputed, and recognizes that there is a mismatch in the Department's application of Pennsylvania's apportionment formula because the tax base includes value that is not included in the apportionment factors. The majority further states that Pennsylvania's franchise taxation scheme "may be less than ideal" and even "unconstitutional in some applications." Nevertheless, the majority reinstates the Department's settlement of Unisys's franchise tax liability, concluding that Unisys failed to meet its burden of proof. I disagree with this conclusion for several reasons.

In my view, if the majority had applied the unitary business principle to all aspects of Pennsylvania's franchise tax scheme, it would have reached a different result. Instead, the majority discounted the integrated relationship between the value of a unitary business and formula apportionment, and in the process, undermined the underlying foundation of the unitary

3. As consistently interpreted and applied by the Department, the property, payroll and sales figures that comprise the three apportionment fractions represent only the property, payroll and sales of the taxpayer itself, and not of the taxpayer's subsidiaries. *See Unisys Corp. v. Commonwealth*, 726 A.2d 1096, 1099 (Pa.Commw.1999). Thus, under the Department's method, the net worth of and dividends paid by certain subsidiaries of a corporation are included in the corporation's actual value, but the property, payroll and sales of those subsidiaries are *not* considered in the apportionment factor. *See id.*

business principle. *See* Jerome R. Hellerstein & Walter Hellerstein, *State Taxation*, § 9.15(2) (3d ed.1998); E. George Rudolph, *The Unitary Business Concept and Affiliated Corporate Groups*, 25 Tax. L.Rev. 171, 205 (1970). As I see it, where the theoretical predicate for apportioning dividend income is that the payors of the intangible income are subsidiary corporations engaged in a unitary business with the parent company, it follows as a matter of principle that the subsidiaries' factors must be included in the formula employed to apportion such value.[4] When a formula, such as the one at issue here, fails to recognize the payroll, property, and sales of the subsidiaries that helped generate apportionable value for a unitary enterprise, there ceases to be a rational relationship between the value being taxed and the activities that gave rise to the value and, in my opinion, the inescapable consequence is that unitary value is not apportioned in a constitutional manner.[5] *See* Paul H. Frankel et al., *Factor Representation: Respecting Both Legs of the Unitary Business Principle*, 10 J. Multistate Tax'n 6 (Sept.2000) (states that include intangible income in taxpayer's apportionable tax base without providing representation in the apportionment formula for the factors

[4]. The rationale for apportioning intangible income when the payor and payee are engaged in a unitary business is that such income is, in substance, the operating income of the unitary enterprise, even though it takes the form of intangible income paid by the subsidiary to its parent. *See Mobil Oil Corp. v. Comm'r of Taxes of Vermont*, 445 U.S. 425, 440–41, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).

[5]. Indeed, the U.S. Supreme Court has endorsed three-factor apportionment formulas "precisely because payroll, property, and sales appear in combination to reflect a very large share of the activities by which value is generated." *Container Corp.*, 463 U.S. at 170, 103 S.Ct. 2933. It is apparent to me that if property, payroll, and sales are the basic ingredients of a fully functioning company, the same factors necessarily represent the basic ingredients of a unitary enterprise composed of multiple companies. However, the majority allows the Department to have it both ways: it includes the value of subsidiaries in the parent's apportionable tax base on the theory that the parent and the subsidiary are engaged in a unitary business, but then ignores the unitary business principle by apportioning that value by factors that reflect *only* the parent's own operations on a separate company basis. *See* Randy M. Grimshaw & Maxwell A. Miller, *Having Your Cake & Eating It Too: State Taxation of Corporate Intangible Income Without Factor Representations*, 1 The State & Local Tax Lawyer 1 (1996).

that generated the income eviscerate the unitary business principle and transgress constitutional limits on state taxation).

This position is supported by several state courts that have held that an apportionment scheme is unconstitutional when the composition of the apportionment factors is inconsistent with the tax base, and that mismatch distorts the tax base. *See E.I. DuPont de Nemours & Co. v. State Tax Assessor,* 675 A.2d 82, 89 (Me.1996) (failure to adjust apportionment factors to properly reflect in-state value may result in taxation of extraterritorial value and therefore, violates the fundamental fairness requirements of the Due Process Clause);[6] *American Telephone & Telegraph Co. v. Wisconsin Dep't of Revenue,* 143 Wis.2d 533, 422 N.W.2d 629, 634–36 (Ct.App.1988) (tax base/apportionment factor mismatch inherently unconstitutional under Due Process and Commerce Clauses); *People v. Knapp,* 230 N.Y. 48, 129 N.E. 202, 206 (1920) (consistency between tax base and apportionment fraction is constitutional requirement); *see also Homart Development Co. v. Norberg,* 529 A.2d 115 (R.I.1987) (not reaching constitutional issue, but concluding that failure to use factor representation results in inherent and manifest distortion).[7]

**6.** The Supreme Court of Maine first reached this conclusion in *Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039 (Me.1991). As the majority correctly notes, in *DuPont* the Maine Supreme Court abandoned its *internal* consistency analysis set forth in *Tambrands,* but specifically affirmed its prior holding as to the *external* consistency of an apportionment scheme, stating:

> At the same time, we reaffirm the ultimate conclusion in *Tambrands* that the Assessor's failure to adjust a taxpayer's apportionment factors to reflect the taxpayer's activities both within and without the state of Maine may result in the taxation of extra-territorial value and, therefore, may run afoul of the fairness principles of the Due Process Clause.

*DuPont,* 675 A.2d at 89. Although the Commonwealth Court below and the Department on appeal here both asserted that the Supreme Court of Maine "abandoned" *Tambrands,* a careful reading of *DuPont* clearly refutes that position.

**7.** Although the Commonwealth Court below held that factor representation was not a constitutional requirement for an apportionment formula, it observed:

These state courts applied the same reasoning expressed by U.S. Supreme Court Justice John Paul Stevens, the only Justice of the U.S. Supreme Court to address the issue Unisys raises here. Addressing a taxing scheme with a base/apportionment factor mismatch similar to the one here, Justice Stevens stated in his dissent in *Mobil Oil Corp. v. Comm'r of Taxes of Vermont*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980):

> Unless the sales, payroll, and property values connected with the production of income by the payor corporations are added to the denominator of the apportionment formula, the inclusion of earnings attributable to those corporations in the apportionable tax base will inevitably cause Mobil's Vermont income to be overstated. Either Mobil's worldwide "petroleum enterprise," is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner. As it is, it has indefensibly used its apportionment methodology artificially to multiply its share of Mobil's ... taxable income perhaps as much as tenfold. In my judgment, the record is clearly sufficient to establish the validity of Mobil's objections to what Vermont has done here.

*Id.* at 460–61, 100 S.Ct. 1223 (Stevens, J., dissenting) (internal citations and footnotes omitted).[8] In my view, Justice Stevens' cogent analysis is equally applicable to the instant case.[9]

> Since the purpose of the formula is to apportion the value of the unitary business enterprise among different jurisdictions, it can hardly be subject to dispute that an apportionment formula which includes data from the entire enterprise will yield a more accurate result than a formula based solely upon the parent corporation's operations.

*Unisys*, 726 A.2d at 1101.

8. The majority in *Mobil Oil* concluded that the constitutional claim had been waived, and therefore did not address that issue. *Mobil Oil*, 445 U.S. at 441 n. 15, 100 S.Ct. 1223.

9. Additionally, two state taxation scholars have expressed sentiments that I find particularly compelling:

> Some state courts have rejected a parent's right to include in its apportionment formula a proportionate share of the subsidiary's factors when payor-payee unity is the predicate for the apportionability of intangible income. They have done so without providing a

To demonstrate the weight of that logic as applied to Pennsylvania's scheme, one need only consider the practical application of taxing dividends paid by subsidiaries to the parent company of a unitary enterprise. Where out-of-state income paid to the parent company in the form of dividends increases, the result is an increase in the capital stock value subject to taxation by Pennsylvania, whether or not the unitary enterprise's in-state activities increase. In other words, although the tax base increases, there is no corresponding increase in the denominator of the apportionment formula to account for the out-of-state production of the value. In fact, given this mismatch, an enterprise's Pennsylvania tax liability could increase even while its in-state property, payroll, and sales were *decreasing*.[10] The inherent distortion of such a system is even more apparent where a parent company, such as Unisys, has a large number of subsidiaries.

Unlike the majority, I believe that the systemic deficiency in the Department's application of the apportionment formula will inevitably cause unconstitutional miscalculations of the

> satisfactory explanation of the basis for the rejection. These courts have instead taken refuge in the doctrine that "rough approximation, not precision" is the standard for unconstitutional apportionment; that the application of an apportionment formula will be struck down only if the taxpayer can prove "by clear and cogent evidence" that the income attributed to the state is "out of all appropriate proportion to the business transacted ... in that State" or has "led to a grossly distorted result"; or that the apportionment in question falls "within the substantial margin of error inherent in any method of attributing income among the components of a unitary business." What these opinions fail to consider, however, is that the "rough approximation" standard is designed to provide states with a "margin of error" in implementing theoretically sound formulas that may on occasion produce results that fall short of perfection. The standard should not be employed as a safe harbor for analytically indefensible apportionment regimes that happen to produce results that are not "grossly distorted" in a constitutional sense.

Jerome R. Hellerstein & Walter Hellerstein, *State Taxation*, § 9.15[4][a] (3d ed.1998) (footnotes and citations omitted).

**10.** Based on the Department's calculations, the only circumstance in which Pennsylvania fairly taxes in-state value is if, by mere fortuity, the percentage of the parent company's business that is conducted in Pennsylvania happens to correspond with the percentage of the unitary enterprise's in-state business activity.

franchise tax. In my view, the unitary concept, at least to the extent it is applied in computing the tax base, necessarily must carry through to all aspects of the tax computation. Thus, both practical and theoretical consistency, as well as the Due Process and Commerce Clauses, require that some form of factor representation be used in the franchise tax apportionment formula to account for out-of-state value production.

While Pennsylvania's scheme will no doubt produce constitutional results in some instances, the practical effect of such a scheme on other occasions is the unconstitutional taxation of out-of-state value and impermissible double taxation. *See Norfolk & Western,* 390 U.S. at 327, 88 S.Ct. 995 ("The facts of life do not neatly lend themselves to the niceties of constitutionalism; but neither does the Constitution tolerate any result, however distorted, just because it is the product of a convenient mathematical formula"). In my judgment, the complete absence of the subsidiaries from the apportionment formula makes it facially apparent that the Pennsylvania statute reaches beyond constitutional limits and taxes value outside its borders. *See Norfolk & Western,* 390 U.S. at 325, 88 S.Ct. 995 (apportionment formula must be rationally related, both on its face and in its application, to values connected with the taxing state); *see also Armco Inc. v. Hardesty,* 467 U.S. 638, 644–45, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984) (a tax that unfairly apportions income from other states is a form of discrimination against interstate commerce, and discrimination can be proved from the face of the tax statute); *cf. Fulton Corp. v. Faulkner,* 516 U.S. 325, 331, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996) (quoting *Oregon Waste Systems, Inc. v. Dep't of Envtl. Quality of Oregon,* 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)) ("State laws discriminating against interstate commerce on their face are 'virtually *per se* invalid.' "); *Trinova Corp. v. Michigan Dep't of Treasury,* 498 U.S. 358, 374, 111 S.Ct. 818, 112 L.Ed.2d 884 (1991) (quoting Jenkins, *State Taxation of Interstate Commerce,* 27 Tenn. L.Rev. 239, 242 (1960)) (a tax imposed "on sleeping measured by the number of pairs of shoes you have in your closet is a tax on shoes"); *PPG Industries, Inc. v. Commonwealth, Bd.*

*of Finance & Revenue,* 567 Pa. 580, 790 A.2d 261, 264 (2001) (holding manufacturing exception to Pennsylvania's capital stock and franchise taxes unconstitutional because it facially discriminated against interstate commerce).

In reaching its conclusion here, the majority stresses the U.S. Supreme Court's caveat that all apportionment formulas are necessarily imperfect. Such a pronouncement does not, however, cure the constitutional infirmity of Pennsylvania's scheme. Moreover, while it is true that the U.S. Supreme Court has held that a "rough approximation rather than precision" is sufficient to satisfy constitutional demands, to be granted that leeway the formula must first be designed to tax *only* the value of intrastate business activity. *See International Harvester Co. v. Evatt,* 329 U.S. 416, 421–22, 67 S.Ct. 444, 91 L.Ed. 390 (1947) (quoting *Illinois Central R. Co. v. Minnesota,* 309 U.S. 157, 161, 60 S.Ct. 419, 84 L.Ed. 670 (1940)); *see also* Jerome R. Hellerstein & Walter Hellerstein, *State Taxation,* § 9.15[4][a] (3d ed.1998) ("rough approximation" standard is designed to provide states with a "margin of error" in implementing *theoretically sound formulas*). As I see it, Pennsylvania's mismatched apportionment formula is not designed to tax only in-state activity, and the theoretically unsound taxation scheme is therefore unconstitutional on its face.

The majority ultimately rejects Unisys's claim that the apportionment scheme is unconstitutional on its face because Unisys used what the majority considers unreasonable methods in calculating the tax base for comparison to the Department's methodology.[11] In so concluding, the majority states that Unisys "presented baseline figures predicated solely upon full factor representation of subsidiaries, while failing to estab-

11. As discussed in the majority opinion, the U.S. Supreme Court has addressed challenges to apportionment formulas using percentage comparisons. However, those cases are irrelevant in the sense of numerical comparison because none dealt with an inconsistency between the tax base and an apportionment formula like in the instant case. Moreover, in my view, when a taxing scheme violates the underlying principle of three-factor formulation, i.e., fair apportionment, requiring proof of gross distortion from that formula is nonsensical.

lish an adequate correlation between the hybrid, adjusted tax base ascribed to it and factor representation on such terms." [12] I disagree with the majority's analysis in dismissing Unisys's claim.

The reasonableness test the majority applies to Unisys's baseline figures has no precedential basis and, in my view, its application imposes an additional burden on a taxpayer challenging the constitutionality of a tax apportionment scheme and grants the government too much leeway in assessing the franchise tax. Under the majority's new test, the Department can impose a franchise tax using virtually any apportionment formulation, unless and until a taxpayer comes forward with a taxing scheme that meets not only the majority's reasonableness threshold, but also well-established constitutional requirements. Thus, the majority essentially relieves the Department of its primary responsibility for imposing taxes in a constitutional manner, *see Container Corp.*, 463 U.S. at 164, 103 S.Ct. 2933; *Hunt-Wesson*, 528 U.S. at 463–64, 120 S.Ct. 1022, and creates a bright-line rule requiring precision from taxpayers in an area of tax law in which the majority concludes it is impossible for the Department to be precise. I simply cannot agree with this shifting of the burden onto Unisys to formulate a constitutionally valid system of taxation to compare with the Department's facially unconstitutional system.

Moreover, in my estimation, the fact that Unisys calculated its franchise tax liability with full factor representation while failing to compensate for the "hybrid" nature of the franchise tax base is not necessarily fatal to its entire claim. Given the

12. Importantly, there is no evidence, or even any allegation, that Unisys presented misleading, inaccurate, or patently false numbers. Rather, the majority concludes that Unisys failed to provide a "proper baseline" in terms of the assets it included in its calculation of capital stock value and, due to the unreasonableness of its calculations, there was no legitimate calculations with which to compare the Department's methodology.

I would also note that the calculations provided by Unisys were part of the stipulations of fact that the parties submitted for administrative and judicial review of the Department's settlement of the franchise tax assessments in this case.

facial inadequacy of the Department's methodology, Unisys's failure to advance a perfect taxation scheme is not dispositive of the constitutional inquiry at issue here. *Cf. International Harvester Co. v. Dep't of Treasury*, 322 U.S. 340, 343, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944) (Rutledge, J., concurring in part and dissenting in part) ("If there is a want of due process to sustain" a tax, "by that fact alone any burden the tax imposes on the commerce among the states becomes 'undue' "). Because I would find the Department's application of the franchise tax statute unconstitutional, the only remaining consideration on remand should be, in my mind, whether the Department should implement full factor representation or some hybrid form of factor representation.

I also believe the majority erred in giving substantial weight to Unisys's actual franchise tax liability in addressing its constitutional claim. For example, the majority discredits Unisys's methodology due to its failure to account for the statutory 25% reduction in the net worth of the unitary enterprise when calculating capital stock value under the franchise tax statute. *See* 72 P.S. § 7601(a). While the 25% reduction ultimately reduces the tax due, I believe the majority overstates its relevance here because the capital stock value formula set forth in § 7601(a) was merely the legislature's method of establishing the proper *tax base*, and the 25% reduction of the entire tax base does not impact the calculation of a constitutionally valid *apportionment fraction*. I am also puzzled by the majority's reliance on the fact that Unisys's subsidiaries experienced negative average net income in certain tax years.[13] The General Assembly concluded that one of the relevant factors in determining capital stock value is net income, *see id.*, a determination which necessarily requires accounting for a company's costs, operating expenses, and potentially, losses. Irrespective of profitability, under the taxing statute a company incurs franchise tax liability based on the average of net income *and* net worth. *See id.* As

13. Under the statutory formula, yearly net losses are included in calculating book value, but the five-year average of net income *cannot* be less than zero.

such, the fact that a subsidiary incurs a net loss does not necessarily skew the apportionment of value.

Furthermore, I do not agree with the majority that the statutory provision of exemptions, deductions and adjustments for determining the tax base creates a "margin of error" for a constitutional assessment of apportionment under the Due Process and Commerce Clauses. The whole purpose of the apportionment formula is to identify in-state commerce and not, as the majority seems to suggest, to simply reduce the tax burden to a level that in all likelihood does not overstep constitutional bounds. Thus, the proper inquiry is whether the apportioned tax base fairly represents the in-state business activity of a taxpayer and not whether the actual dollar amount of the assessed tax adequately represents in-state activity irrespective of the constitutionality of the apportionment factor. See *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 265, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (where tax has differential impact on in-state and out-of-state activities, the determination of constitutionality does not depend upon whether one focuses upon the benefited or the burdened); *cf. Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 331, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) (discriminatory character of the challenged provisions was demonstrated by the fact that they "foreclose tax-neutral decisions" about where to transact business).

Based on the foregoing analysis, I would hold that factor representation is constitutionally required when taxing a multi-state unitary business, and that Unisys met its burden of showing by clear and cogent evidence that the Department's application of Pennsylvania's franchise tax apportionment scheme violates the Due Process and Commerce Clauses of the U.S. Constitution.[14]

14. While the Commonwealth would be left with the unenviable task of producing a specific apportionment formula, I would conclude that if value generated by foreign subsidiaries is used to calculate the capital stock value of a unitary enterprise, there must be some type of factor representation in the apportionment formula in order to calculate a constitutionally fair franchise tax on the in-state business activities of a multi-jurisdictional enterprise. Given this conclusion, I would not

Justice NEWMAN dissenting.

I respectfully dissent. The taxing scheme employed by the Department of Revenue (Department) is unconstitutional as applied to multi-state business enterprises with subsidiaries, such as Unisys Corporation (Unisys), because there is no rational relationship between the income attributable to this Commonwealth for tax purposes and the activities giving rise to that income within the Commonwealth.

The United States Constitution limits the authority of states to tax businesses that operate both within and without their confines. "Under both the Due Process and the Commerce Clauses . . . a state may not, when imposing an income-based tax, tax value earned outside its borders." *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983) (internal quotation omitted). The Constitution does not "allow a State to tax income arising out of interstate activities—even on a proportional basis—unless there is a minimal connection or nexus between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise." *Id.* at 165–166, 103 S.Ct. 2933 (internal quotations omitted).

I recognize that it is not possible to construct a formula that exactly computes the portion of a business conducted within a specific jurisdiction. *International Harvester Co. v. Evatt*, 329 U.S. 416, 421, 67 S.Ct. 444, 91 L.Ed. 390 (1947). "[T]he States have wide latitude in the selection of apportionment formulas and that a formula-produced assessment will only be disturbed when the taxpayer has proved by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportion to the business transacted . . . in that State,' or has 'led to a grossly distorted result.'" *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (quoting *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell*, 283 U.S. 123, 135, 51 S.Ct. 385, 75

reach the issue of whether Unisys was entitled to relief under the statutory fair apportionment provisions set forth in 72 P.S. § 7401(3)2.(a)(18).

L.Ed. 879 (1931) and *Norfolk & Western Ry. Co. v. Missouri State Tax Commission,* 390 U.S. 317, 326, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968)).

Nevertheless, a state seeking to apportion the income of a multi-jurisdictional business must do so fairly, which necessitates that the tax be both internally and externally consistent. *Container Corp.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545. Internal consistency requires that "the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business's income being taxed." *Id.* at 169, 103 S.Ct. 2933. "This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Oklahoma Tax Commission v. Jefferson Lines, Inc.,* 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). "A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." *Id.*

External consistency requires that "the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated." *Container Corp.,* 463 U.S. at 169, 103 S.Ct. 2933. "External consistency ... looks not to the logical consequences of cloning [the internal consistency test], but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Oklahoma Tax Commission,* 514 U.S. at 185, 115 S.Ct. 1331. To demonstrate external inconsistency, the taxpayer must demonstrate that the income attributed to the State is disproportionate to the business transacted in the State or has led to a grossly distorted result. *See Moorman Mfg., supra.*

In the case at bar, pursuant to Section 602(b) of the Pennsylvania Tax Reform Code of 1971,[1] the Commonwealth imposes a Franchise Tax on out-of-state corporations to the extent that they do business within Pennsylvania. The formula for computing the tax is comprised of two components: (1) Actual Value; and (2) an Apportionment Factor. Actual value for the years at issue here was calculated by averaging the capitalized five year average net income with seventy-five percent (75%) of the net worth and subtracting from that figure a one-hundred thousand dollar ($100,000.00) deductible. Net worth of a parent company such as Unisys includes the value of any common stock the corporation owns in other entities, such as subsidiaries, and dividends received from its stock ownership of those subsidiaries. 61 Pa.Code § 115.27(a) and (b). The Apportionment Factor is determined by calculating the percentages of the corporation's property, payroll, and sales in the Commonwealth. The value of the corporation's property within the Commonwealth is divided by the value of the corporation's property everywhere to ascertain the percentage of property within the Commonwealth. 72 P.S. § 7602(b)(1). The same method is employed to determine the percentages of payroll and sales within the Commonwealth. The Apportionment Factor is equal to the average of these three percentages. The Department then multiplies Actual Value by the Apportionment Factor, and that number by 10 mills to arrive at the Franchise Tax due.

The Department calculates the Apportionment Factor using only the property, payroll, and sales of the parent taxpayer corporation, in this case, Unisys itself, and not of the parent taxpayer corporation's subsidiaries. However, the Department computes Actual Value using the net worth and dividends not only of the parent taxpayer corporation, but also of its subsidiaries. Thus, while the net worth of the parent taxpayer corporation's holdings in a subsidiary and any dividends paid to the parent taxpayer corporation by the subsidiary are included in Actual Value, the property, payroll, and sales of those subsidiaries are not included in the calculation

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7602(b).

to determine the Apportionment Factor. As the majority recognizes, "[u]nlike the methodology utilized to determine the tax base ... the apportionment formula prescribed by the taxing statute, as interpreted by the Department, does not take into account factors representing out-of-state value generated by taxpayer subsidiaries." *Majority Opinion,* at 450.

I agree that the taxing scheme at issue here is internally consistent. It is well settled that a three-factor apportionment method, such as the one employed here, is constitutionally acceptable. *See Container Corp.,* 463 U.S. at 165, 103 S.Ct. 2933; *Butler Bros. v. McColgan,* 315 U.S. 501, 505, 62 S.Ct. 701, 86 L.Ed. 991 (1942) ("We cannot say that property, payroll, and sales are inappropriate ingredients of an apportionment formula. [T]hese factors may properly be deemed to reflect the relative contribution of the activities in the various states to the production of the total unitary income, so as to allocate to [one state] its just proportion of the profits earned by [taxpayer] from [the] unitary business"). If each jurisdiction calculated Actual Value and the apportionment factor in the same manner as does the Department, the aggregate apportionment factor would equal one hundred percent (100%) as each item of property, payroll, and sales must, by definition, be attributed to one and only one jurisdiction. Thus, all jurisdictions, *in toto,* would tax no more nor no less than one hundred percent (100%) of the Actual Value of Unisys and its subsidiaries. *See E.I. DuPont de Nemours & Co. v. State Tax Assessor,* 675 A.2d 82, 89 (Me.1996), *overruling Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039 (Me.1991) (*Tambrands* held that a taxing scheme analogous to the one at issue here failed the internal consistency test, but *DuPont* rejected that analysis. *DuPont* held that the *Tambrands* scheme was internally consistent but that the taxing body's failure to adjust the "apportionment factors to reflect the taxpayer's activities both within and without the state ... may result in the taxation of extra-territorial value and, therefore, may run afoul of the fairness principles of the Due Process Clause").

While the taxing scheme employed by the Department in the case *sub judice* is internally consistent, it is nonetheless

constitutionally infirm because it is not externally consistent. In *Mobil Oil Corporation v. Com'r of Taxes of Vermont*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), the United States Supreme Court was faced with a taxing scheme that did not include in the calculation of the apportionment factor the property, payroll, and sales of Mobil Oil's subsidiaries, even though the tax was imposed on the value of Mobil Oil and dividends it received from its subsidiaries. A majority of the justices of the United States Supreme Court deemed the issue with which we are presently faced waived and, accordingly, refused to address it. Justice Stevens filed a separate dissenting opinion, in which he concluded that "[u]nless the sales, payroll, and property values connected with the production of income by the payor corporations are added to the denominator of the apportionment formula, the inclusion of earnings attributable to those corporations in the ... tax base will inevitably cause Mobil's Vermont income to be overstated." *Id.* at 461, 100 S.Ct. 1223 (Stevens, J., dissenting). Justice Stevens reasoned that "[e]ither Mobil's worldwide petroleum enterprise is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner. As it is, it has indefensibly used its apportionment methodology to multiply its share of Mobil's 1970 taxable income." *Id.*

The same concerns are implicated here. The Commonwealth of Pennsylvania has the constitutional prerogative to tax Unisys for its income fairly attributable to its in-state activities. This extends to income derived from subsidiaries. However, when determining the percentage of business that the taxpayer corporation conducts in Pennsylvania, fairness and external consistency mandate that the same entities used to determine Actual Value are used to calculate apportionment. Assume, *arguendo*, that the Actual Value of Unisys is $100 and the actual combined value of Unisys' subsidiaries attributable to the Actual Value of Unisys pursuant to the taxing scheme is $400. Now assume that Unisys conducts 80% of its business within the Commonwealth and that the subsidiaries conduct 10% of their business within the Com-

monwealth. Pursuant to the Pennsylvania taxing scheme, the Actual Value of the taxable corporation would be $500 and the apportionment factor would be 80% (percentage of business Unisys itself conducts in-state). Thus, Unisys would be liable for tax on $400, even though only $120 of its business is attributable to Pennsylvania (80% of $100 + 10% of $400). In fact, this taxing scheme is only externally consistent when the average percentage of property, payroll, and sales in-state for the parent taxpayer corporation is equal to the average percentage of property, payroll, and sales in-state for the combined subsidiaries.

Therefore, I would hold that the taxing scheme is unconstitutional as applied to multi-state business enterprises with subsidiaries because it has the potential to tax extra-territorial income. Whether or not the tax base is purely unitary or a hybrid is of no moment; the tax base is comprised of the parent corporation and at least some aspects of the subsidiaries. The entity or entities used to determine that tax base should be the same entity or entities used to determine proper apportionment. Had the denominator of the apportionment formula included a part of the subsidiaries property, payroll, and sales reasonably designed to balance out the inclusion of subsidiary factors in the tax base, that would be a different question. In this case, however, the Department makes no such attempt at fair apportionment.

I further disagree with the majority that Unisys has failed to demonstrate by clear and cogent evidence that the Commonwealth is taxing income earned extra-territorially. The majority would put the burden on the taxpayer to devise a reasonable apportionment formula and show how that formula differs from the one actually utilized by the Department. I believe that the burden on the taxpayer is to show: (1) that the current scheme has the potential to impose a tax that is not in reasonable proportion to the business activities conducted by the taxpayer in the Commonwealth; and (2) that the tax imposed in this case is unfair.

Unisys has clearly and cogently established both that the current scheme has the potential to impose a tax that is not in

reasonable proportion to its in-state business activities and that the tax imposed on Unisys is unfair. Thus, the taxing scheme is constitutionally infirm as applied to multi-jurisdictional businesses with subsidiaries. The inclusion of aspects of the earnings of the subsidiaries in the actual value of the parent taxpayer corporation without an attendant inclusion of aspects of the property, payroll, and sales of the subsidiaries in the calculation of the apportionment factor renders the relationship between the tax base and the parent taxpayer corporation's business activities conducted within the state unreasonable.

Justice CASTILLE joins in this dissenting opinion.