890 A.2d 368

**UPS WORLDWIDE FORWARDING, INC., Appellant**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Dec. 30, 2005.

## *ORDER*

PER CURIAM.

**AND NOW,** this 30th day of December, 2005, the order of the Commonwealth Court is hereby **AFFIRMED.**

Justice SAYLOR files a dissenting statement.

Justice SAYLOR, dissenting.

In this direct appeal, Appellant UPS Worldwide Forwarding, Inc., seeks to have its corporate net income tax and franchise tax recalculated. As I believe that these taxes should be recalculated under the present facts, I respectfully dissent from this Court's *per curiam* order affirming the judgment of the Commonwealth Court to the contrary.

Appellant, a Delaware corporation, is one of a number of affiliated companies that provide package and document transportation services offered to the end-consumer by United Parcel Service, Inc. ("UPS"). During 1996 and 1997, a group of individuals in Louisville, Kentucky, who performed network planning and logistics functions (part of Appellant's core business functions), worked exclusively for Appellant. Formally, these individuals were employed by a sister corporation, UPS Aviation Services, Inc. ("Aviation Services"). Aviation Services issued their paychecks and performed tax and other

compliance matters required by law. Aviation Services, however, transferred to Appellant the payroll costs it incurred for these employees, and such costs were recorded on Appellant's books and pro forma federal income tax returns as payroll expenses. Appellant reimbursed Aviation Services, dollar-for-dollar, for the salaries and other payroll costs related to these persons via direct inter-company funds transfers.

Under the Tax Reform Code of 1971 (the "Tax Code"),[1] companies that transact business in Pennsylvania must pay a corporate net income tax ("CNI tax"). *See* 72 P.S. § 7402. The Tax Code requires companies that transact some of their business out-of-state to apportion their tax liability according to a three-factor formula, where the three factors are payroll, property, and sales. *See* 72 P.S. §§ 7401(3)2.(a)(2). Thus, the portion of taxes assigned to Pennsylvania consists of a fraction which is the average of three ratios: Pennsylvania payroll divided by overall payroll, Pennsylvania property divided by overall property, and Pennsylvania sales divided by overall sales. *See* 72 P.S. §§ 7401(3)2.(a)(2); *Commonwealth v. Gilmour Mfg. Co.*, 573 Pa. 143, 146, 822 A.2d 676, 677 (2003). If one factor is zero—as for example, if a company has no payroll—that factor is omitted and the apportionment fraction consists of the average of the two remaining ratios. Moreover, a company subject to franchise tax liability must use this same apportionment scheme in apportioning its franchise tax liability. *See* 72 P.S. § 7602(b)(1).

For tax year 1996, Appellant calculated its corporate CNI and franchise taxes using an apportionment formula which took into account only the property and sales factors. In this calculation, Appellant initially omitted any component relating to payroll, because it technically did not have any employees as a matter of employment law. However, Appellant subsequently requested the Department of Revenue (the "Department") to recalculate these taxes using payroll as a third factor, in view of the Louisville employees having performed work for, and been paid by, Appellant (albeit indirectly). This request was denied. Appellant additionally used payroll as a

1. Act of March 4, 1971, P.L. 6 (as amended, 72 P.S. §§ 7101–10004).

factor in tax year 1997, but the taxes were resettled by the Department without the payroll factor. Appellant thereafter appealed these matters to the Board of Finance and Revenue (the "Board"), seeking a recalculation of its taxes using the payroll factor.

After the Board denied relief, Appellant appealed to the Commonwealth Court, whereupon the parties entered into a stipulation of facts (the "Stipulation"). *See* Pa.R.A.P. 1517(f). The Stipulation indicated that, "as a matter of the law of employment," Appellant had no employees during 1996 and 1997, and the Louisville workers were employees of Aviation Services. *See* Stipulation ¶ 14, RR. 77a. In support of its appeal, however, Appellant cited to this Court's decision in *Commonwealth v. American Gas Co.*, 352 Pa. 113, 42 A.2d 161 (1945), in which this Court determined that inter-company reimbursement of payroll costs by a subsidiary corporation constituted payroll expenses incurred by the subsidiary for purposes of three-factor apportionment. Appellant asserted that, under the reasoning of *American Gas*, it incurred payroll costs outside of Pennsylvania for tax purposes during the relevant timeframe, notwithstanding that it had no employees for purposes of employment law. Hence, it claimed that the payroll factor should have been included in the apportionment formula, resulting in a lower tax liability.

In a published opinion and order dated March 1, 2004, a three-judge panel of the Commonwealth Court recognized the similarity between the facts of this case those of *American Gas;* it ultimately denied relief, however, on the basis that the *American Gas* court had determined that the individuals in question were employees of the taxpayer, whereas, here, Appellant stipulated that they were not—at least as a matter of employment law. *See UPS Worldwide Forwarding, Inc. v. Commonwealth*, 843 A.2d 438, 442 (Pa.Cmwlth.2004). Appellant filed exceptions and, after the matter was heard *en banc*, a majority of the Commonwealth Court dismissed the exceptions and entered the March 1st order as a final one on December 8, 2004. In an unpublished opinion in support of its final order, the *en banc* majority relied upon the reasoning

contained in the panel's March 1st opinion. Judge Cohn Jubelirer filed a dissenting opinion which was joined by Judges Leadbetter and Leavitt, and stated as follows:

> The majority bases its holding on [Appellant]'s prior stipulation that it had no employees for the years in question. By strictly applying the definition of "compensation" as provided in section 401 of the Tax Reform Act,[2] the majority finds that [Appellant] had no employees, did not pay compensation and, therefore, had no payroll.
>
> While the majority's approach appears to be simple and straightforward, it fails to carry forth the purpose for utilizing an apportionment formula, which is "to apportion ... tax liability based upon the ratio of the company's business transacted in the Commonwealth to its total business." Section 401. Thus, it is important that the factors used in an apportionment formula "actually reflect a reasonable sense of how income is generated." *Container Corporation of America v. Franchise Tax Board*, 463 U.S. 159, 169[, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545] (1983). As pertinent in this case, the presence or absence of a payroll factor should depend on the **actual business relationship** between [Appellant] and the employees at issue.
>
> Here, for the tax years in question, [Appellant] reimbursed [Aviation Services] dollar-for-dollar for certain payroll costs incurred by [Aviation Services] in serving as the "formal employer" of a group of employees who actually carried out [Appellant]'s core business functions. On [Appellant]'s books, records, and pro forma federal income tax returns, [Appellant] reported these costs as payroll costs incurred by it. Based on this actual business relationship, the employees who carried out [Appellant]'s network planning and logistics function in Louisville, Kentucky were employees of [Appellant].

---

2. Section 401 pertinently provides that: " 'compensation' means wages, salaries, commissions, and any other form of remuneration paid to employes for personal services." 72 P.S. § 7401(3)2(a)(1)(C).

Dissenting Opinion, *slip op.* at 1–3 (Cohn Jubelirer, J.) (footnote, ellipsis, and emphasis in original).

In my view, the Commonwealth Court dissent was correct. In addition to the reasons it cited, I view this Court's precedent in *American Gas* as leading to the same result. In that matter, a parent corporation supplied a subsidiary with corporate officers and administrative support staff, under a written agreement whereby the subsidiary would pay funds back to the parent in return for these services. Although the contract in question specified that "no salaries are to be paid by [the subsidiary] for these Officers, but for their services and the services of their department [the subsidiary] agree[s] to pay [the parent corporation] $5000 per year . . . .," this Court held that, in substance, the monies paid back to the parent corporation were payroll costs incurred by the subsidiary, notwithstanding that the individuals involved were formally employees of the parent. The Court thus rejected the position that the $5000 per year was merely a corporate expense rather than wages and salaries:

> The device of paying their salaries through the parent corporation was ingenious but not conclusive of their status. It is unlikely that [the parent corporation] would contend that it is engaged in the labor brokerage business, supplying trained personnel to other corporations. It is clear that the amounts designated for each of the officers of the [subsidiary] were salaries which the officers were to receive indirectly through [the parent corporation]. The court below has held that these persons were employees of [the subsidiary] engaged in [its] business . . . and that the sums paid to the [parent corporation] for them were wages and salaries within the meaning of the Franchise Tax Act. The record supports this conclusion and it is affirmed.

*American Gas*, 352 Pa. at 116, 42 A.2d at 163.[2]

Presently, it was stipulated that each month Aviation Services would transfer to Appellant the "payroll costs it incurred

2. Although *American Gas* involved only a franchise tax, whereas this case involves both franchise and CNI taxes, the principles are equally applicable, as they pertain to three-factor apportionment, and specifi-

for the employees who performed [Appellant]'s network planning and logistic functions.... Such costs were recorded on [Appellant]'s books as payroll expense." RR. 77a. Hence, despite the lack of a written agreement, there was a dollar-for-dollar reimbursement of the salaries of the employees who performed tasks relating to Appellant's core business functions, thus making this matter an even more transparent case of Appellant paying salaries rather than merely incurring a corporate "expense." *See also* Stipulation at ¶ 48 (RR. 85a) ("The sole legal issue in this case is whether, under the facts described herein, [Appellant] is entitled and required to include the amounts it transferred to [Aviation Services] *to fund payroll costs* for the individuals who performed [Appellant]'s network planning and logistics functions in its payroll factor for purposes of" the relevant state taxes (emphasis added)).[3]

Finally, although Appellant does not advance an express constitutional claim, it does note—as did the Commonwealth Court dissent—that, under the Commerce Clause, *see* U.S. CONST. art I, § 8, cl. 3, state taxes must be fairly apportioned, *see Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), which in turn means that factor-based apportionment should reflect the economic realities of how income is generated for the taxpayer

cally, the circumstances under which a worker is deemed an "employee" for purposes of factor-based apportionment. The parties do not contend that resolution of this issue depends upon what type of tax is involved.

3. The Commonwealth argues that *American Gas* is distinguishable because it involved: (1) employees; (2) a written contract; and (3) officers with statutory obligations to the taxpayer. *See* Brief for Appellee at 6. None of these distinctions is persuasive. As to (1), *American Gas* recognized that the contract specifically indicated that the individuals involved were *not* employees of the taxpayer; thus, the Court resolved the apportionment issue based upon substance, and not the wording of the contract. As to (2), the presence of a written contract was not a dispositive factor in *American Gas*, particularly as the court expressly determined that the contract's terms were not controlling. As to (3), the statutory obligations under corporate law of some of the employees could not have been determinative, as there were also administrative employees who did not have such obligations, and *all* employees' salaries were deemed attributable to the subsidiary company.

company, *see Container Corp.*, 463 U.S. at 169, 103 S.Ct. at 2942; *see also Unisys Corp. v. Commonwealth, Bd. of Fin. & Revenue*, 571 Pa. 139, 160 n. 18, 812 A.2d 448, 460 n. 18 (2002); *Philadelphia Eagles Football Club, Inc. v. City of Phila.*, 573 Pa. 189, 222, 823 A.2d 108, 128–29 (2003) (plurality opinion) (citing, *inter alia, Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 184, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995)), as well as the social costs incurred by the state as a result of the company's activities, *see General Motors Corp. v. District of Columbia*, 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68 (1965). The Tax Code specifies that the payroll factor is Pennsylvania compensation divided by overall compensation. *See* 72 P.S. §§ 7401(3)2.(a)(13). It additionally defines compensation as including any form of payment "to employes for personal services," 7401(3)2.(a)(1)(C). Under the present facts—and considering that the General Assembly intends its statutes to be constitutionally applied, *see* 1 Pa.C.S. § 1922(3); *Parsonese v. Midland Nat'l Ins. Co.*, 550 Pa. 423, 435, 706 A.2d 814, 819 (1998)—I would interpret the term "employees" pursuant to the latter provision to include the Louisville employees who performed work for Appellant, and whose payroll expenses were paid by Appellant. *See generally McNeil–PPC, Inc. v. Commonwealth*, 575 Pa. 50, 63, 834 A.2d 515, 522 (2003) ("[A] taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer." (internal quotation marks omitted)). Although the Commonwealth argues that this construction may allow companies to falsely assert that they have incurred undocumented out-of-state payroll expenses, the interpretation it advances may be equally susceptible of corporate manipulation of state tax liabilities through bookkeeping. The more salient point, in my view, is that Appellant's position comports with basic Commerce Clause principles concerning tax apportionment, as the Louisville workers performed services exclusively for Appellant, and the payroll expenses of those individuals were paid exclusively by Appellant.

Accordingly, I would reverse the order of the Commonwealth Court and remand for a recalculation of Appellant's taxes with the inclusion of the payroll factor in the apportionment formula.